UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KORTNEY RORICK,

                          Plaintiff,           3:11-CV-0078
                                                     (GTS)
v.

COMM'R OF SOC. SEC.,

                          Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

LACHMAN & GORTON                       PETER A. GORTON, ESQ.
  Counsel for Plaintiff
1500 E. Main Street
P.O. Nox 89
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMINISTRATION    ELIZABETH ROTHSTEIN, ESQ.
Office of Region General Counsel – Region II
  Counsel for Defendants
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

      Currently before the Court, in this Social Security action filed by Kortney Rorick ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 14, 18.) For the reasons set forth below, Defendant's motion is granted in part and denied in part, and Plaintiff's motion is granted in part and denied in part.

**I.     RELEVANT BACKGROUND**

    **A.     Factual Background**

Plaintiff was born on October 17, 1987.  She earned a GED and has completed no more than two semesters of college.  During her life, Plaintiff has worked as a cashier, food service worker, and grocery bagger.  Generally, her alleged disability consists of anxiety, depression, migraine headaches, a knee impairment, borderline intelligence, and personality disorder.  Her alleged disability onset date is September 30, 2006, and her date last insured is March 31, 2008.

    **B.     Procedural History**

On September 8, 2008, Plaintiff applied for Social Security Disability Insurance and Supplemental Security Income.  Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On April 12, 2010, Plaintiff appeared *pro se* before the ALJ, Edward I. Pitts.  (T. 25-61.)  On June 23, 2010, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 12-24.)  On December 22, 2010, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-5.)  Thereafter, Plaintiff timely sought judicial review in this Court.

    **C.     The ALJ's Decision**

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 14-20.)  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  (T. 14.)  Second, the ALJ found that Plaintiff's depression, anxiety and migraine headaches are severe impairments, but that her alleged learning disability, post traumatic stress disorder and asthma are not severe.  (T. 14-15.)  Third, the ALJ

found that Plaintiff's mental impairments did not meet or medically equal one of the listed impairments located in 20 C.F.R. Pt. 404, Subpart P, Appendix. 1. (The ALJ considered listing 12.04. T. 15.) Fourth, the ALJ found that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels, but is limited to performing simple, one-two step tasks. (T. 15-19.) Fifth, and finally, the ALJ determined that Plaintiff has no past relevant work, and that there are jobs that exist in the national economy that she can perform. (T. 19-20.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

In support of her motion for judgment on the pleadings, Plaintiff makes the following four arguments. First, Plaintiff argues that the ALJ erred in (a) failing to consider whether Plaintiff's knee impairment, borderline intelligence or personality disorders were severe, (b) failing to consider or find that Plaintiff's personality disorder met or equaled Listing 12.06 or 12.08, and (c) failing to consider the functional limitations caused by Plaintiff's migraine headaches. (Dkt. No. 14 at 10-18 [Plf.'s Mem. of Law].) Second, Plaintiff argues that the ALJ erred in failing to properly develop the record. (*Id.* at 18-19.) Third, Plaintiff argues that the ALJ failed to properly consider the opinion of her treating physician, Darlene Denzien, D.O. (*Id.* at 19-20.) Fourth, and finally, Plaintiff argues that the ALJ did not properly assess her credibility. (*Id.* at 20-24.)

### B. Defendant's Arguments

In response (and in support of his cross-motion for judgment on the pleadings), Defendant makes the following five arguments. First, Defendant argues that (a) the ALJ properly determined that the record did not support a finding that Plaintiff's alleged knee

impairment was severe, (b) there is no evidence of Plaintiff's alleged personality disorder in the record, and (c) although the ALJ did not find that Plaintiff's borderline intelligence was a severe impairment, he properly considered her psychological and intelligence testing when assessing Plaintiff's functional limitations and concluded that her borderline intelligence did not preclude her from performing basic work activities.  (Dkt. No. 18 at 5-13 [Def.'s Mem. of Law].)

Second, Defendant argues that the ALJ properly concluded that there is no evidence in the record that Plaintiff had an impairment that meets or equals either Listing 12.06 or 12.08. (*Id.* at 13-17.)

Third, Defendant argues that the ALJ properly considered Plaintiff's treating physician records, and concluded that Plaintiff's migraines do not cause additional, non-exertional limitations and are consistent with her ability to perform simple work.  Further, Defendant argues that the report from Plaintiff's treating physician, which was submitted to the Appeals Council, is not entitled to weight because it is inconsistent with the record evidence.  (*Id.* at 17-19.)

Fourth, Defendant argues that, contrary to Plaintiff's assertion, the ALJ properly developed the record: he considered the records of Plaintiff's treating physician and the records of other examining physicians, extensively questioned Plaintiff at the hearing, and noted no obvious gaps in the record.  (*Id.* at 19-20.)

Fifth, and finally, Defendant argues that the ALJ properly considered Plaintiff's subjective contentions of pain and functional impairments compared to the objective evidence in the record before concluding that Plaintiff can perform a full range of unskilled work. (*Id.* at 20-23.)

### III. RELEVANT LEGAL STANDARD

#### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

6

IV.     ANALYSIS

    A.     **Whether the ALJ Erred in Failing to Identify Plaintiff's Knee Impairment, Borderline Intelligence or Personality Disorder as Severe Impairments**

After carefully considering the matter, the Court answers this question in the negative as it relates to Plaintiff's borderline intelligence and personality disorder, for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 18 at 7-13 [Def.'s Mem. of Law].)[1]  However, regarding Plaintiff's knee impairment, the Court finds that the ALJ failed to properly develop the record in order to determine whether her knee impairment is severe, generally for the reasons stated in Plaintiff's memorandum of law.  (Dkt. No. 14 at 15-17 [Plf.'s Mem. of Law].)  The Court would only add the following analysis.

During Plaintiff's hearing, at which she appeared *pro se*, the following colloquy occurred:

> Q: Okay. Okay.  Any other problems besides for the headaches and the psychological, anxiety and depression problems?
> A:  I have knee problems, but I can't, a doctor, I haven't been able to see a doctor.
> Q: Okay. Well, unless I have something from a doctor, I'm not able to consider these things.
> A:  Right.

(T. 41.)  Later in the hearing, Plaintiff's mother also testified that Plaintiff "has knee problems." (T. 46.)  To be sure, Plaintiff raised the issue of a knee impairment for the first time at the hearing.  However, "[t]he testimony to be taken by the ALJ at the hearing is not limited to those impairments previously alleged; the ALJ is directed only to look 'fully into the issues.'"  *Cruz v. Shalala*, 94-CV-0929, 1995 WL 441967, at *4 (S.D.N.Y. Jul 26, 1995) (quoting 20 C.F.R. § 404.944).  Moreover, it is important to note that

---

[1] Because the Court concludes that the ALJ did not err in failing to identify Plaintiff's personality disorder as severe, it need not address the issue of whether the ALJ erred in failing to find that Plaintiff's personality disorder met or equaled Listing 12.06 or 12.08.

> [w]hen[, as here,] a claimant properly waives his right to counsel and proceeds pro se, the ALJ's duties are heightened. The ALJ must adequately protect a pro se claimant's rights by ensuring that all of the relevant facts are sufficiently developed and considered and by scrupulously and conscientiously probing into, inquiring of, and exploring for all the relevant facts. And when a claimant appears pro se and is otherwise impaired, [the court] must make a searching investigation of the record to make certain that the claimant's rights have been adequately protected.

*Moran v. Astrue*, 569 F.3d 108, 113 (2d Cir. 2009) (internal quotation marks omitted).

More specifically, the ALJ was required to consider "all [of Plaintiff's] symptoms, including pain, and the extent to which [Plaintiff's] symptoms can reasonably be accepted as consistent with the objective medical evidence [i.e., medical signs and laboratory findings] and other evidence." 20 C.F.R. § 404.1529(a). The objective medical evidence suggesting that a knee impairment is one of Plaintiff's medically determinable impairments includes the following:

In January 2008, Plaintiff presented to James Skiff, M.D., at the Candor Care Family Center with allegations of moderate knee pain that is "aggravated by bending, climbing stairs, walking." (T. 213.) On examination, Dr. Skiff noted Plaintiff's right knee was tender and she had mild pain with motion. Dr. Skiff diagnosed Plaintiff with chronic patella chondromalacia and recommended physical therapy. (T. 215.) On July 3, 2008, Plaintiff presented to Joshua Steinberg, M.D., at the Johnson City Family Care Center with right knee pain that she described as constant. Plaintiff further complained that she was experiencing more pain and that it hurt to climb stairs and bend. (T. 243.) On examination, Dr. Steinberg noted "tenderness with patella movement and pain with palpation of extensor ligaments of patella[,]" and he directed Plaintiff to use naprosyn for pain and to go to physical therapy. (T. 245.) On July 16, 2008, Plaintiff visited Anwar Hussein, M.D., at the Johnson City Family Care Center. During a follow-up visit regarding her right knee pain, Plaintiff reported that physical therapy was helping her. (T. 239.)

8

Dr. Hussein noted that Plaintiff's knee pain was improving and he advised her to continue physical therapy. (T. 241.) The next evidence in the record regarding Plaintiff's knee pain is her testimony at the April 12, 2010 hearing, wherein she alleged experiencing "knee problems" but that she had been unable to see a doctor. (T. 41.)

The record includes at least some diagnostic evidence of functional impairments related to Plaintiff's right knee pain after her alleged disability onset date.[2] Given the ALJ's lack of consideration of any of the record evidence relating to Plaintiff's knee impairment, remand is appropriate for a decision in the first instance regarding its severity, and then, if necessary, determinations at the subsequent steps of the sequential analysis.

> B.  Whether the ALJ Erred in Failing to Consider the Functional Impairments Caused by Plaintiff's Migraine Headaches

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 14 at 17-18 [Plf.'s Mem. of Law].) The Court would only add the following. The ALJ's decision must contain a sufficient explanation of his reasoning to permit the reviewing court to judge the adequacy of his conclusions. *See Raja v. Astrue*, 11-CV-3490, 2012 WL 1887131, at *5 (S.D.N.Y. May 23, 2012). Here, the ALJ clearly found that Plaintiff's migraine headaches constitute a severe impairment. However, aside from a summary of Plaintiff's hearing testimony, the remainder of the ALJ's decision is devoid of any discussion or analysis of the remaining record evidence regarding Plaintiff's migraines. Accordingly, the Court cannot judge whether or not the ALJ

---

[2] Plaintiff submitted additional evidence to the Appeals Council regarding pain and swelling of her *left* knee, which was not chronic (because she reported that it began on June 22, 2010 and that she had no prior problems with that knee). (T. 360-364.) Because this evidence relates to an impairment that did not exist between Plaintiff's alleged disability onset date and the date of the ALJ's decision, it need not have been considered by the ALJ. *See Baladi v. Barnhart*, 33 F. App'x 562 (2d Cir. 2002) (citing *Perez v. Chater*, 77 F.3d 41, 45 [2d Cir. 1996]).

considered the functional limitations caused by Plaintiff's migraines when he determined her residual functional capacity. For this reason, remand is appropriate so that the ALJ may sufficiently explain his reasoning.

### C. Whether the ALJ Erred in Failing to Consider the Opinion of Plaintiff's Treating Physician

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 14 at 19-20 [Plf.'s Mem. of Law].) The Court would only add the following analysis.

Under the "treating physician's rule," an ALJ must give controlling weight to the treating physician's opinion when (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, No. 11-2907, 2012 WL 2096630, at *1 (2d Cir. June 12, 2012). Even when not entitled to controlling weight, the opinion of a treating physician may be given extra weight under certain circumstances. The factors an ALJ should consider when determining the proper weight of a treating physician's opinion include the following: (1) frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. *See* 20 C.F.R. § 404.1527(d); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). Regulations require ALJs to set forth their reasons for the weight they assign to a treating physician's opinion. *Shaw*, 221 F.3d at 134.

At the hearing, Plaintiff testified that Dr. Denzien was treating her for depression, anxiety, migraines and asthma. (T. 36-42.) The record at the time of the ALJ's decision also included Dr. Denzien's treatment records from April 2009 through January 2010. Moreover, the Appeals Council received Dr. Denzien's treatment records from May 2009 through September 2010. (T. 738.) These treatment records reflect diagnoses of migraines, depression and bipolar II. (T. 562, 567, 569, 571-572, 590, 626.) Also before the Appeals Council was a mental questionnaire completed by Dr. Denzien, wherein she recorded her assessment of Plaintiff's functional limitations as a result of her bipolar disorder and migraines for the period September 2, 2009 through September 2, 2010. (T. 622-624.) However, the Court is unable to glean from the ALJ's decision whether he considered the evidence before him regarding Dr. Denizen's treatment of Plaintiff. While the ALJ mentions, in support of his conclusion that Plaintiff's inconsistent psychological treatment undermines her credibility, that Plaintiff's only "consistent recent psychological treatment . . . [was] through the family doctor[,]" his sole discussion of Dr. Denzien's treatment of Plaintiff is limited to a three-line paragraph regarding her April 9, 2009 treatment of Plaintiff for depression. (T. 17, 19.)

For these reasons, the ALJ erred in failing to explain the weight he accorded to Dr. Denzien's opinions and his reasoning regarding same. Because the Court is unable to determine whether the ALJ's determination was supported by substantial evidence, remand is appropriate so that the ALJ may explain his reasoning.

        D.      **Whether the ALJ Erred in Failing to Properly Assess Plaintiff's Credibility**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 14 at 20-24 [Plf.'s Mem. of Law].) The Court would add only the following analysis.

A Plaintiff's allegations of pain and functional limitations are "entitled to great weight where . . . it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (Mordue, J.) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.*

Here, the ALJ noted Plaintiff's allegation that "she experiences anxiety to the point where she is hard to understand, [w]hen she does not know [w]hat to do she becomes anxious and has panic attacks, [and that] due to her depression it is hard [for] her to wake up during the morning."  (T. 17.)  The ALJ further noted Plaintiff's allegation that "she suffers from migraine headaches four or five times a week that starts with headache, sensitivity to light and so she has to be in a dark room (sic)."  *Id.*  After finding that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ concluded that Plaintiff's statements regarding the limitations caused by her symptoms are not credible to the extent they are inconsistent with his conclusion that Plaintiff retains the residual functional capacity to perform a full range of work at all exertional levels, limited to performing simple, one-two step tasks.  (T. 15, 18.)  The ALJ went on to explain that although he finds Plaintiff's allegations "mostly credible, her credibility is decreased because of inconsistent psychological treatment."  (T. 18.)  Later, the ALJ concludes that he "cannot find the [Plaintiff's] allegations that she is incapable of performing all work activity to be credible[,]" and that "[t]he inconsistency of her psychological treatment undermines [Plaintiff's] credibility[.]" (T. 19.)

The ALJ erred in failing to properly explain his analysis of Plaintiff's credibility, and therefore, the Court is unable to determine whether the ALJ's conclusions regarding Plaintiff's credibility are supported by substantial evidence.  Remand is appropriate, therefore, in order for the ALJ to properly explain his reasoning.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 18) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED in part** and **DENIED in part** consistent with this Decision and Order; and it is further is

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: September 18, 2012
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge